UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IRIS SMITH, ) | CASE NO. 3:10CV1829 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Iris Smith ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court affirms the Commissioner's decision and dismisses Plaintiff's complaint in its entirety with prejudice:

**I.    PROCEDURAL AND FACTUAL HISTORY**

In August 2007, Plaintiff filed applications for DIB and SSI, alleging disability beginning March 21, 2003 due to HIV, fatigue, high blood pressure, herpes, shortness of breath, insomnia, right knee arthritis, anxiety, stress, and depression. ECF Dkt. #11-5 at 3, 8, 11; ECF Dkt. #11-6 at 2-6; ECF Dkt. #11-7 at 10. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #11-5 at 2-13. Plaintiff filed a request for an administrative hearing and on February 3, 2009, an Administrative Law Judge ("ALJ") conducted the hearing. ECF Dkt. #11-3 at 2. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Charles McBee, a vocational expert ("VE"). *Id.*

On June 2, 2009, the ALJ issued a decision denying benefits. ECF Dkt. #11-2 at 15-25. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. ECF Dkt. #10-2 at 2-11.

On August 19, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On January 10, 2011, Plaintiff filed a brief on the merits. ECF Dkt. #14. On April

8, 2011, Defendant filed a brief on the merits. ECF Dkt. #17. On April 22, 2011, Plaintiff filed a reply brief. ECF Dkt. #18.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ determined that Plaintiff had no medically determinable severe impairments from December 19, 2003 through December 11, 2007. ECF Dkt. #11-2 at 17. He found that beginning on December 12, 2007, Plaintiff had the impairments of depression, right knee osteoarthritis, status post left knee lateral release surgery, left shoulder tendinopathy and status post right rotator cuff repair surgery, which qualified as severe impairments under 20 C.F.R. §404.1521 *et seq*. and 20 C.F.R. § 416.921 *et seq*. *Id.* at 17-18. The ALJ further found that since December 12, 2007, Plaintiff had the impairments of a history of HIV infection, a history of asthma and a history of alcohol and cocaine dependence, which were non-severe impairments. *Id*. at 18.

The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). ECF Dkt. #11-2 at 19. He discounted Plaintiff's allegations of pain and limitations and concluded that Plaintiff had the residual functional capacity ("RFC") to perform limited light work involving lifting and carrying up to ten pounds frequently and twenty pounds occasionally, sitting up to six hours of an eight-hour workday, standing and walking two hours per eight-hour workday, occasionally climbing balancing, stooping, kneeling and crouching, but no crawling or reaching overhead with her upper extremities. *Id*. at 21. The ALJ further limited Plaintiff to tasks involving the understanding and remembering of simple instructions and concentrating on simple tasks for two-hour periods over an eight-hour day. *Id*. at 21-22.

Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could not return to her past relevant work, but she could perform jobs existing in significant numbers in the national economy, including that of a school bus monitor, blending tank helper, or a counter clerk. ECF Dkt. #11-2 at 24-25.

**III.**    **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's

failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V. ANALYSIS

The Court takes Plaintiff's arguments out of the order presented in her brief and in the order of the sequential steps for determining disability.

### A. STEP TWO DETERMINATION

Plaintiff asserts that substantial evidence does not support the ALJ's "implicit" theory of traumatic onset since he found that she had no severe impairments prior to December 12, 2007 but found that she had severe impairments beginning on December 12, 2007. ECF Dkt. #14 at 15-16. Plaintiff contends that if the ALJ found that she had no severe impairment prior to December 12, 2007 because she was incarcerated for several years prior to that date and thus could not receive benefits, he had no legal authority to do so because incarceration does not mean that a claimant is not disabled. *Id*. at 16, citing 42 U.S.C. § 402(x).

The Court finds no merit to Plaintiff's assertion. The ALJ's decision does not "imply" that he found that Plaintiff's severe impairments existing after December 11, 2007 were of a traumatic origin. The ALJ reviewed the medical evidence in detail in explaining his Step Two finding that Plaintiff had only non-severe impairments prior to December 12, 2007 and substantial evidence supports that determination. The ALJ cited to medical records showing that prior to December 12, 2007, Plaintiff was treated for drug and alcohol addiction, which were in full remission. ECF Dkt. #11-2 at 18, citing ECF Dkt. #11-9 at 2 (discharge summary judgment treatment indicating that Plaintiff met objectives of treatment plan), ECF Dkt. #11-12 (report indicating drug history as last use in 2001); *see also* ECF Dkt. #11-16 at 15 (indicating diagnosis of polysubstance substance abuse, in sustained full remission, controlled environment) . He found that Plaintiff had a history of asthma and hypertension, but the medical evidence showed that they were consistently controlled

with medications and no instances of hospitalization, urgent treatment or complications existed. ECF Dkt. #11-2, citing *e.g.*, ECF Dkt. #11-10 (inmate health profile list showing diagnosis of hypertension and asthma and medical documents from 2004 through 2007 showing no complications, urgent treatment or hospitalizations). He also noted Plaintiff's HIV positive status, but found that the medical evidence showed that her status was stable and she was being treated with medication which kept her viral load at an undetectable level. ECF Dkt. #11-2 at 18, citing *inter alia*, ECF Dkt. #11-10 (medical evidence showing HIV diagnosis, medications, and viral load). The ALJ also indicated that mental health treatment records showed that during this period of time, Plaintiff had mild depressive symptoms that were stable. ECF Dkt. #11-2 at 18, citing *inter alia,* ECF Dkt. #11-16 (diagnosis of major depression, recurrent in partial remission); see also ECF Dkt. #11-11 at 6 (May 17, 2007 note from prison mental health evaluation indicating that Plaintiff's symptoms, "including sadness, insomnia, anxiety, irritability, have recently been stable on Celexa."). In addition, the ALJ relied upon the findings and conclusions of an agency examining physician who performed an examination of Plaintiff on December 5, 2007 and opined that Plaintiff had no limitations from physical activities after he found that Plaintiff was able to sit, stand and walk, and found that her upper extremity functions were intact. ECF Dkt. #11-2 at 18. The ALJ also reviewed the medical evidence of record establishing that many of Plaintiff's physical impairments, such as her knee and upper extremity conditions, did not surface until March 2008 and later. *Id*. at 19.

The Court rejects Plaintiff's assertion that the ALJ used her period of incarceration to find that she had no severe impairments and was not disabled prior to December 12, 2007. ECF Dkt. #14 at 15-16. The ALJ mentioned the incarceration, indicating that Plaintiff was incarcerated from 2003 to October of 2007 for aggravated robbery. ECF Dkt. #11-2 at 18. He noted that "[e]ven if she had been disabled prior to December 12, 2007," her social security benefits would have been suspended. *Id*. However, as explained above, the ALJ conducted a review of the medical evidence for that time period which constitutes substantial evidence for his finding that Plaintiff did not have a severe impairment prior to December 12, 2007.

### B. **OBESITY AND KNEE IMPAIRMENTS**

Plaintiff also complains that the ALJ failed to evaluate her obesity and knee impairments. ECF Dkt. #14 at 14-15. With regard to her knee impairments, the ALJ did address them. He found that her right knee osteoarthritis and status post left knee lateral release surgery were severe impairments at Step Two, considered Listing 1.02 at Step Three with regard to her knees, and noted that Plaintiff still asserted some knee pain despite surgery, which was reasonable in light of her medical history. ECF Dkt. #11-2 at 23. He noted that Plaintiff began complaining of knee pain in March 2008 and he cited to the medical records regarding her knees, including the MRI, physical therapy notes, surgical notes, and doctors' notes. *Id*. at 19.

As to Plaintiff's obesity, the Court finds that the ALJ did not err in failing to address it in his decision. While Plaintiff calls this Court's attention to documents in the record showing her height and weight, which appear to meet the definition of obesity, Plaintiff did not present any evidence to the ALJ that her obesity impacted her ability to work. *See Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. App'x 852, 857 (6th Cir. 2003)(ALJ did not commit error in not addressing claimant's obesity in his decision when claimant failed to indicate that obesity was a significant impairment and neither claimant not doctors "offered any evidence to suggest that her weight was a significant impairment."); *see also Young v. Comm'r of Soc. Sec.,* No. 3:09CV1984, 2011 WL 2182869, at *7 (N.D. June 6, 2011)(ALJ not required to address obesity in decision because although claimant provided evidence of obesity, no diagnosis of obesity existed, claimant failed to allege obesity as impairment, failed to complain of obesity in testimony, and failed to furnish evidence of impact obesity had on ability to work); *Benson v. Astrue*, No. 1:10CV1654, 2011 WL 6122944, at *9 (N.D. Ohio Nov. 15, 2011), unpublished, Report and Recommendation adopted by 2011 WL 6122942 (N.D. Ohio Dec. 9, 2011), unpublished (although record showed claimant's height and weight, ALJ did not err in failing to address obesity in decision because claimant failed to present ALJ with evidence of how weight impacted ability to work).

Similarly in this case, Plaintiff did not testify about her obesity, did not list obesity as an impairment in her disability report, and the medical evidence that she submitted did not establish that her obesity impacted her ability to work or how it impacted her ability to work. Accordingly, the

-6-

Court finds that the ALJ did not error by failing to address Plaintiff's obesity.

### C. MEDICATION SIDE EFFECTS

Plaintiff also asserts that the ALJ erred when he failed to evaluate the side effects of her medications as required by Social Security Rule 96-7p ("SSR 96-7p"), 20 C.F.R. §§ 404.1529(c) and 416.929(c). ECF Dkt. #14 at 14-15. The Court finds that the ALJ adequately considered the side effects from Plaintiff's medications and substantial evidence supports his determination to discount her credibility regarding the severity of those side effects.

An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). The Court cannot substitute its own credibility determination for that of the ALJ. *Kuhn v. Comm'r,* 124 Fed. App'x 943, 945 (6th Cir. 2005). Claimants who challenge the ALJ's credibility determination "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir.2005). The Court must give the ALJ's credibility determinations great weight because "the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir.2007).

Pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). When disabling pain is alleged, the social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. §§ 404.1529, 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical

-7-

condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* The ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.

While he must consider the factors in Social Security Ruling 96-7p, an ALJ need not analyze all of the factors in his decision. *See Boutros v. Astrue*, No. 1:09CV2574, 2010 WL 3420296, at *4 (Aug. 9, 2010). He must, however, show that he considered the relevant evidence and he must provide clear reasons for his credibility findings. *Id.,* citing SSR 96-7p, Purpose section and citing and quoting *Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

In the instant case, the ALJ recited the proper regulations and SSR 96-7p in his decision, indicating that he had considered the relevant factors in determining credibility. ECF Dkt. #11-2 at 22-23. The record shows that the ALJ, Plaintiff's counsel and Plaintiff discussed medication side

effects at the hearing. When the ALJ asked Plaintiff to identify her medical issues in addition to her rotator cuff injuries, she told the ALJ:

> A: The tear in my knee. A meniscus tear in my knee. I have back problems. And my illnesses for my HIV. I be - - my depression. My mental illness. I be - - the pills and stuff make me very fatigue and it makes me - - I don't have enough willpower to get up to motivate. I'm in the bed a lot. I'm depressed a lot.

ECF Dkt. #11-3 at 14. Plaintiff repeated:

> A: With the - - yeah, the side effects of all my medications that I take from mental health.

*Id.* Upon questioning by Plaintiff's counsel, Plaintiff indicated that she was taking Seroquel, Abilify, Risperdal and Celexa for her mental health conditions. *Id.* at 19. When asked about the side effects from these medications, Plaintiff indicated that she feels:

> A: Fatigue, drowsy. I still - - some of them make me feel like I can't concentrate. Some of them put - - the one is sleeping me so it puts me to sleep.

*Id.* at 20. Plaintiff also reported that she suffers fatigue from the Atripla that she takes for her HIV. *Id.* at 21. She went on to state that she is always in bed, she does not get out at all and she explained that this was due to the medications and due to her depression. *Id.* Plaintiff and the ALJ also engaged in the following dialogue:

> Q: Okay. All right. And basically you say as a result of your physical problems and the side effects of your medicines you basically just have no energy and no ability to move about during the day.
>
> A: No.
>
> Q: And you spend most days just lying down.
>
> A: In the bed.
>
> Q: Do you do - - I mean, do you do anything other than just lie there? What are you doing? Staring at the ceiling? Do you watch television - -
>
> A: Television or just lay in the bed. I just lay in the bed.
>
> Q: And are you awake when you're doing this? Are you - -
>
> A: Sometimes I'll fall asleep and get a little sleep. My sleep is in spurts. Like I'll get an hour or two here, wake up, be up for a while, and then I'll fall asleep eventually again from laying there so long. And it's just - - it's an ongoing basis.

*Id.* at 27-28.

Plaintiff relies upon her testimony at the hearing and her disability report statements for her assertions of significant medication side effects. ECF Dkt. #14 at 14. She cites to no medical records documenting her complaints of fatigue, tiredness and drowsiness resulting from her medications. Plaintiff did submit the drug information that accompanied each of her prescriptions and circled the particular listed side effects that she suffered as to each medication. ECF Dtk. #11-18 at 21-29. While many of these medications list side effects of fatigue and drowsiness, this is insufficient to find that Plaintiff suffered such side effects to the extent that she alleges. It must be remembered that the burden is still on the claimant to show at this step in the sequential evaluation process that her impairments are disabling. *See Murphy v. Astrue*, No. 1:10CV512, 2011 WL 3843844, at *5 (N.D. Ohio Aug. 30, 2011)(while claimant's reported side effects were consistent with possible side effects listed for prescribed medications, substantial evidence supported ALJ's credibility determination due to lack of medical evidence supporting her allegations of debilitating side effects and medical expert's refusal to deem claimant wholly disabled by pain and drowsiness).

Upon review of the medical record, the only reference to Plaintiff's complaints about medication side effects is a notation that Seroquel caused her to gain weight. *See* ECF Dkt. #11-11 at 9-12. A medical record evaluating her HIV indicated that Plaintiff complained of fatigue, was not sleeping well, was restless and was depressed. ECF Dkt. #11-18 at 10. However, there was no indication that this was due to Plaintiff's medications as opposed to her physical and/or mental impairments. Further, this same document contains a medications section immediately preceding the complaint section where Plaintiff's medications are listed, but no side effects or complaints from the medications were identified. *Id*.

Moreover, "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006)(internal quotation marks omitted). The ALJ in the instant case did just that. He discussed Plaintiff's side effects with her at the hearing. He cited the relevant social security regulations and Ruling which included consideration of medications and their side effects. He addressed Plaintiff's activities of daily living, noting that while Plaintiff testified that she did very

little at home and sometimes could not get out of bed, the objective medical records showed the contrary. ECF Dkt. #11-2 at 20. The ALJ cited to Dr. Kounine's January 2009 note indicating that Plaintiff was independent in all daily living activities, which was corroborated by Plaintiff's physical therapist. *Id*. He limited her to standing and walking two hours per eight-hour workday, limited her climbing, balancing, stooping, kneeling and crouching, and limited her to understanding and remembering simple instructions and concentrating to two hour periods over an eight-hour day on simple tasks. *Id*. at 22-23.

The ALJ certainly could have done more to address this issue. However, in light of the lack of medical evidence supporting Plaintiff's complaints of side effects from her medications to her doctors, the lack of a requirement that the ALJ address each of the SSR 96-7p factors in his decision, and the deference given to the ALJ's credibility determination, the Court finds no merit to Plaintiff's assertion.

**D**.    **NON-EXAMINING STATE-AGENCY PSYCHOLOGIST OPINIONS**

Plaintiff also challenges the ALJ's treatment of the opinions of Dr. Tishler, the state agency non-examining psychologist. ECF Dkt. #14 at 6. The Court finds no error by the ALJ.

In his RFC, the ALJ found that Plaintiff could interact appropriately with co-workers and supervisors. ECF Dkt. #11-2 at 21-22. He also indicated that he had considered the assessments of the state agency consultants and assigned them significant weight. *Id*. at 23. Dr. Tishler reviewed the medical evidence of record on April 18, 2008 and indicated that his assessment spanned from March 21, 2003 through the date of his completion of the forms. ECF Dkt. #11-19. Dr. Tishler opined that due to her affective disorder of recurrent major depressive disorder, Plaintiff had mild limitations in her activities of daily living, moderate limitations in social functioning and difficulties in maintaining concentration, persistence and pace, and she suffered one or two episodes of extended duration decompensation. *Id*. at 29. In completing the mental RFC assessment, Dr. Tishler found, inter alia, that Plaintiff had no significant limitations in her abilities to interact with the general public, to get along with coworkers or peers without exhibiting behavioral extremes, or to maintain socially appropriate behaviors. *Id.* at 3. He further found that Plaintiff had moderate limitations in her abilities to accept instructions and respond appropriately to criticism from supervisors, to work

in coordination or proximity to others without being distracted by them, and to respond appropriately to changes in the work setting. *Id.* at 2-3. In explaining his conclusions, Dr. Tishler stated that Plaintiff "would do best in a routine setting that does not require frequent interactions with others." *Id.* at 4.

Plaintiff does not contend that the ALJ was required to adopt Dr. Tishler's opinion or was bound by those opinions. ECF Dkt. #14 at 8. Rather, she asserts that the ALJ's decision concerning Dr. Tishler's opinion was "internally inconsistent" since he agreed with and assigned significant weight to Dr. Tishler's opinions, but did not adopt Dr. Tishler's conclusion regarding the type of work environment in which she would do best, that is, one that required only infrequent interactions with others. *Id.* at 7-8. Plaintiff contends that this constitutes prejudicial error since the ALJ did not include this limitation in his RFC or in his hypothetical person to the VE. *Id.*

The Court finds no internal inconsistency in the ALJ's findings. The ALJ found that Plaintiff could interact appropriately with co-workers and supervisors. ECF Dkt. #11-2 at 21-22. This is supported by Dr. Tishler's assessment finding in Section I of the mental RFC assessment form ("Summary Conclusions") that Plaintiff had no significant limitations in interacting appropriately with the general public, getting along with co-workers or peers, or in maintaining socially appropriate behavior. ECF Dkt. #11-20 at 3. Dr. Tishler had also found in Section I that Plaintiff was limited in her abilities to accept criticism and instructions from supervisors, but only to a moderate extent. *Id*. However, this does not contradict the ALJ's finding that Plaintiff could interact appropriately with supervisors.

At first glance, an inconsistency appears to lie in Dr. Tishler's assessment, not in the ALJ's decision as argued by Plaintiff. In Section III of Dr. Tishler's assessment ("Functional Capacity Assessment"), he opined that Plaintiff "would do best in a routine setting that does not require frequent interactions with others." ECF Dkt. #11-20 at 4. However, in Section I of the same assessment, he checked the boxes indicating that Plaintiff had no significant limitations in interactions with the general public, co-workers and peers, and had only moderate limitations in accepting instructions and responding appropriately to criticism from supervisors, and in working in coordination with or in proximity to others without being distracted by them. *Id*. at 2.

In addressing the portions of the forms used by agency consultants to document their assessment, the Program Manual Operating System ("POMS"), a reference used by SSA staff to conduct daily business, states that "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  POMS § 24510.060.  Section III is described as the section used for recording the  consultant's actual mental RFC determination, "explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*.

The Sixth Circuit Court of Appeals views the POMS as persuasive authority in the Circuit. *See Kirves v. v. Callahan*, No. 96-5179, 1997 WL 210813 at (6th Cir. 1997), citing *Drombetta v. Sec'y of Health & Human Servs*., 845 F.2d 607, 609 (6th Cir. 1987).  However, the Court has not resolved the issue of whether the Section I restrictions or Section III conclusions apply when a discrepancy exists between the two sections.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)("[t]hough the parties argue at length whether and under what circumstances it is sufficient for an ALJ to include in a vocational hypothetical only the Section III Functional Capacity Assessment and not also the more specific checked limitations in Section I, we need not resolve this issue.").  The Courts in this Circuit have differing opinions as to the application of Section I and Section III by the ALJ.  *Kane v. Astrue,* No. 2011 WL 3353866 (N.D. Ohio Aug. 3, 2011)(listing cases that courts have found no error by ALJ in omitting Section I restrictions on assessment form); *Joiakim* v. *Comm'r of Soc. Sec.*, No. 10-11079, 2011 WL 1120043 at *6 (E.D. Mich. March 8, 2011)(listing cases), adopted by 2011 WL 1134655 (E.D. Mich. Mar. 25, 2011).  In *Kane*, Judge Lioi of this District affirmed the Magistrate Judge's Report and Recommendation finding that the ALJ erred in relying upon Section I of the form rather than the Section III assessment.  2011 WL 3353866, at *3.  Judge Lioi noted differences between the psychologist's Section I assessments and the Section III assessment and found that while the differences between the two were not glaring, they varied enough "that the Court is concerned that the ALJ's failure to consider the only portion of the form that actually contains Dr. Flynn's assessment makes a meaningful review of the ALJ's decision impossible."  *Id*. at *4.  Judge Lioi therefore found no merit to the Commissioner's objection that the

ALJ committed harmless error in failing to refer to Section III in his decision because the Section I restrictions were essentially the same as the Section III conclusions. *Id*. at *3. In *Warford v. Astrue*, Judge Unthank of the Eastern District of Kentucky "continued [his] longstanding practice on the issue" and found that Section I of the assessment contained the actual mental restrictions while Section III was merely a more detailed elaboration of the limitations or capacities contained in Section I. 2010 WL 3190756, at *8 (E.D. Ky. Aug. 11, 2010). Judge Unthank concluded that these Sections worked together and "Section I contains the actual restrictions concerning mental capacity found by the reviewer and Section III provides additional explanation and clarification but does not negate the Section I restrictions." *Id*. He remanded the case because the reviewers completing the assessment forms indicated a number of areas of impairment in Section I but did not specify the degree of impairment required by Section III and the ALJ based his mental RFC on Section III of the form. *Id*.

This Court need not decide the Section I/Section III issue in this case. Here, Dr. Tishler's Section III finding does not conclude that Plaintiff is incapable of work that involves frequent interaction, but rather, it suggests that Plaintiff may perform her best without frequent interaction with others. The Court agrees with Defendant that this is different from a RFC assessment, which is "the most that you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Moreover, it is the ALJ who determines a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see Poe v. Comm'r of Soc. Sec.*, No. 08-5912, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009)("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician."). Reviewing Dr. Tishler's Section III conclusion with his Section I findings of no significant limitations in interactions with coworkers and the general public, and only moderate limitations in accepting criticism and instructions from supervisors, the Court finds that the ALJ's RFC as to this issue was not internally inconsistent and therefore did not require further explanation of Dr. Tishler's opinion or adoption of his Section III conclusion.

For these reasons, the Court finds no merit to Plaintiff's assertion that the ALJ's evaluation of Dr. Tishler's opinion was internally inconsistent.

### E.     VOCATIONAL EXPERT ISSUES

Plaintiff also alleges that the ALJ committed numerous errors with regard to his presentation of hypothetical persons to the VE and his other responsibilities with regard to the VE.  ECF Dkt. #14 at 9-14.  The Court finds no merit to these assertions.

Plaintiff first contends that the ALJ's erroneous evaluation of Dr. Tishler's opinions impacted the VE's testimony as to jobs available for Plaintiff because the ALJ did not include the limitation of no frequent interaction and the jobs solicited from the VE involved frequent interactions with others.  ECF Dkt. #14 at 9.  Since the Court found above that the ALJ did not err in his RFC assessment as to Plaintiff's ability to frequently interact with others, the Court finds that the ALJ did not commit error in failing to include this limitation in his hypothetical person presented to the VE. *See Delgado v. Comm'r. of Soc. Sec.*, 30 Fed. Appx. 542, 548 (6th Cir.2002)(An ALJ's hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence.").

Plaintiff next asserts that the ALJ violated SSR 00-4p and failed to fulfill his affirmative responsibility under this Ruling because he did not ask the VE if his statements were consistent with the Dictionary of Occupational Titles ("DOT").  ECF Dkt. #14 at 10-12.  Social Security Ruling 00–4p states that "before relying on [VE] evidence to support a disability determination or decision, [the ALJ]: must [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence ... and the [DOT], ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved." 2000 WL 1898704, at *1. "[T]he adjudicator has an affirmative responsibility to ask about any possible conflict between [VE] evidence and information provided in the DOT [by asking the VE] if the evidence he or she has provided conflicts with information provided in the DOT. . . ." *Id*. at *4.

The ALJ did inquire about possible conflicts between the VE's testimony with the DOT, although he did so at the beginning of the questioning of the VE rather than after receiving his testimony.  Immediately before the ALJ took testimony from the VE, the ALJ indicated to the VE:

> Q:    All right.  Let's - - let me ask you a few questions and if your testimony is different from the Dictionary of Occupational Titles will you let us know that?

ECF Dkt. #11-3 at 31. The VE responded: "Yes, your Honor." *Id*. The VE then identified jobs that were available to the hypothetical individuals presented by the ALJ with various limitations described by the ALJ. *Id.* at 32-35. In identifying the numerous jobs that were available, the VE cited to the DOT codes for each job. *Id.* It was not until the VE testified as to the sit/stand option that he informed the ALJ that the DOT does not provide for a sit/stand option, but he informed the ALJ that he was relying upon university studies from the University of Texas Pan America to testify that the jobs that he identified in his response to the ALJ's second hypothetical could be performed with a sit/stand option based upon those studies. *Id*.

Reviewing the testimony of record, the Court finds that the ALJ fulfilled his obligation under SSR 00-4p by informing the VE that he was to alert the ALJ if and when any apparent or actual conflicts existed between his testimony and the DOT. See *Mickler v. Comm'r of Soc. Sec.*, No. 10-10663, 2010 WL 6413319, at *4 (E.D. Mich. Nov. 4, 2010)(ALJ fulfilled SSR 00-4p duty by specifically asking VE to notify her of any conflict between testimony and DOT), Report and Recommendation adopted by 2011 WL 1233233 (E.D. Mich. Mar. 29, 2011).

Plaintiff contends that the VE's testimony regarding the sit/stand option somehow conflicted with all three DOT jobs that he identified. ECF Dkt. #14 at 13-14; ECF Dkt. #18 at 6. However, the VE pointed out at the hearing that the DOT does not address sit/stand options and he thus indicated his reliance upon the University of Texas Pan American studies. ECF Dkt. #11-3 at 35. "[C]ourts within this circuit have repeatedly found that while the DOT does not explicitly refer to sit/stand options, a vocational expert's opinion regarding such options are not contradictory to the DOT." *Creque v. Astrue*, No. 4:10CV1528, 2011 WL 4054859, at *5 (N.D. Ohio Aug. 18, 2011)(Report and Recommendation adopted in 2011 WL 4043786 (N.D. Ohio Sept. 12, 2011), quoting *Jones v. Soc. Sec., Admin.*, No. 3:09–0951, 2011 WL 766974, at *8 (M.D.Tenn. Feb.25, 2011) (internal citations omitted), Report and Recommendation adopted *Jones v. Astrue*, No. 3:09–0951, 2011 WL 900032 (M.D.Tenn. Mar.15, 2011); *Bennett v. Astrue*, No. 5:07CV38–J, 2008 WL 345523, at *6 (W.D.Ky. Feb.7, 2008); *Walton v. Comm'r of Soc. Sec.*, No. 08–13273, 2009 WL 2905952, at *9 (E.D.Mich. Sept.8, 2009). The undersigned finds the same in that no conflict existed between the VE's testimony as to a sit/stand option and the DOT. Therefore, the ALJ was under no obligation to

further question the VE regarding this issue.

Plaintiff also challenges the ALJ's alleged failure to inquire further as to the "apparent conflict" between the VE's testimony and the DOT as to overhead reaching requirements for a hypothetical person that the ALJ found could not perform any overhead reaching. ECF Dkt. #14 at 12. Plaintiff contends that two of the three occupations that the VE identified that such a person could perform, blending tank helper and counter clerk, are listed in the DOT as requiring occasional overhead reaching. *Id.* Plaintiff concludes that because the ALJ failed to elicit a "reasonable explanation" from the VE regarding this conflict and failed to reconcile that conflict in his decision, substantial evidence does not support the ALJ's reliance upon the VE's testimony as to the ability to perform the blending tank helper and counter clerk jobs. *Id*. at 13.

The Court rejects Plaintiff's assertion. First, as explained above, the ALJ informed the VE to notify him if any conflicts existed between the VE's testimony as to the jobs that he identified and the DOT's requirements for those jobs. ECF Dkt. #11-3 at 31. When the ALJ included an overhead reaching restriction in his second hypothetical presented to the VE, the VE identified the jobs that the ALJ cited in his decision, which included the blending tank helper and counter clerk occupations. *Id*. at 34. Despite his prior notification to the ALJ of his use of a source other than the DOT for the sit/stand option, the VE did not indicate a conflict or inconsistency existed between his testimony and the DOT for his finding as to the jobs that could be performed for the second hypothetical person with an overhead reaching restrictions. Moreover, while Plaintiff includes the DOT citations and requirements for the occupations of blending tank helper and counter clerk, this fails to establish that occasional *overhead* reaching is required by such occupations. They do indicate that reaching is required "occasionally," meaning up to one-third of the time, but Plaintiff provides no evidence that overhead reaching is required in these DOT descriptions. *See* ECF Dkt. #14–1 at 4, 12. Moreover, even if it were, the DOT contains a special notice which states that its occupational information merely reflects jobs as generally found to occur and the DOT descriptions may not coincide in every respect with the content of jobs as performed in particular industries, establishments, or locations. *Matelski v. Commissioner of Social Sec.*, No. 97-3366, 1998 WL 381361, *6 (6th Cir. June 25, 1998) (citing DOT at xiii). In addition, SSR 00–4p recognizes that a VE "may be able to provide more

specific information about jobs or occupations than the DOT." SSR 00–4p. Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs that he identified with an overhead reaching restriction. *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607 (6th Cir.1995)(ALJs and VEs are not bound by the DOT because the Social Security regulations do not require them to rely upon the DOT's classifications); *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir.2003) (DOT occupational descriptions do not necessarily trump VE testimony).

Finally, the Court notes that Plaintiff's attorney failed to raise this alleged conflict or inconsistency before the ALJ at the hearing. The Sixth Circuit has held in unpublished cases that the Social Security regulations do not require the ALJ to conduct his own investigation into the testimony of a VE to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the ALJ. *See Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir.2008); *Martin v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 369, 374-75 (6th Cir.2006).

In summary, the Court finds no merit to Plaintiff's final contention because the VE did not alert the ALJ as to a conflict or inconsistency between his testimony and the DOT as to overhead reaching when asked to do so, the ALJ properly relied on the VE's testimony after posing an accurate hypothetical question. Further, Plaintiff's attorney failed to raise the issue of any conflict before the ALJ and the ALJ was not required to conduct his own investigation into the testimony of the VE to determine its accuracy.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

DATE: April 12, 2012                              */s/George J. Limbert*
                                                                        GEORGE J. LIMBERT
                                                                          UNITED STATES MAGISTRATE JUDGE